IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLEAR WIRELESS, LLC, | : |
| Plaintiff, | : |
| v. | : C. A. No. 10-218-MPT |
| CITY OF WILMINGTON and WILMINGTON ZONING BOARD OF ADJUSTMENT, | : |
| Defendants. | : |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

In this case arising under the Telecommunications Act of 1996 (the "TCA"), the court now considers defendants' Motion to Dismiss the Complaint pursuant to *Fed. R. Civ. P.* 12(b)(6).[1] The parties completed briefing on this issue on July 19, 2010.[2] For the reasons below, defendants' Motion is granted in part and denied in part.

**II. BACKGROUND**

On or about September 25, 2009, plaintiff Clear Wireless LLC ("Clear") filed an application with the City of Wilmington (the "City") for a zoning variance for property located at 2600 West 7th Street in Wilmington, Delaware. Clear is a licensed provider of high-speed wireless mobile services. Clear requested a variance from § 48-138 of the Wilmington City Code to install a rooftop antenna system. Clear proposed to "collocate" its equipment on the building's existing chimneys, eliminating the need to

---

[1] D.I. 7.
[2] *See* D.I. 16.

build a new tower or extend an existing one.  Four of Clear's competitors–SprintPCS, T-Mobile, Cricket Communications, and MetroPCS–were previously granted comparable variances and are presently operating substantially similar equipment on the roof of 2600 West 7th Street.  The City of Wilmington Zoning Board of Adjustment ("ZBA") held a hearing on Clear's request on January 13, 2010.  At the conclusion of this hearing, the ZBA voted 2-1 to deny Clear's application.  Despite numerous requests, Clear did not receive a written copy of the ZBA's decision until April 1, 2010.

On March 17, 2010, Clear filed a complaint against the City and the ZBA seeking equitable relief directing approval of its application.[3]  Clear alleges violations of the TCA through unreasonable discrimination, effective prohibition of personal wireless services, and failure to render a timely written decision.[4]  Defendants filed the present Motion to Dismiss in lieu of an answer.[5]

## III.  DISCUSSION

### A.  Standard of Review

*Fed. R. Civ. P.* 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[6]  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[7]  A motion to

---

[3]  D.I. 1.
[4]  *See* D.I. 1 at ¶¶ 44-81.
[5]  D.I. 7.
[6]  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[7]  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550

dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[8]  While the court draws all reasonable factual inferences in the light most favorable to plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[9]

To survive a motion to dismiss, Clear's factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."[10]  Clear is thus required to provide the grounds of its entitlement to relief beyond mere labels and conclusions.[11] Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[12]  A claim has facial plausibility when a plaintiff pleads factual content sufficient for the court to draw the reasonable inference

---

U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[8] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[9] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

[10] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[11] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[12] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

that the defendant is liable for the misconduct alleged.[13]  Once stated adequately, a claim may be supported by showing any set of facts consistent with the allegations in the complaint.[14]  Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record when reviewing a motion to dismiss.[15]

**B.  Sufficiency of the Complaint**

   *1.  Count I (Unreasonable Discrimination)*

Count I alleges unreasonable discrimination in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I), which provides that "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services."  The two-pronged test for unreasonable discrimination in this Circuit asks (1) whether the relevant providers are functionally equivalent and (2) whether the governmental body unreasonably discriminated among them.[16]  The second prong of this inquiry requires a showing that the other providers are "similarly situated, i.e., that the structure, placement or cumulative impact of the existing facilities makes them as or more intrusive than the proposed facility."[17]  Defendants do not

---

[13] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).
[14] *See Twombly*, 550 U.S. at 563 (citations omitted).
[15] *See, e.g, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).
[16] *See Nextel West Corp. v. Unity Twp.*, 282 F.3d 257, 265-66 (3d Cir. 2002).
[17] *See Ogden Fire Co. No. 1 v. Upper Chichester Twp.*, 504 F.3d 370, 392 (3d Cir. 2007) (citing *APT Pittsburgh Ltd. P'Ship v. Penn Twp. Butler County of Pa.*, 196 F.3d 469, 480 n.8 (3d Cir. 1999)).

dispute that Clear is functionally equivalent to other wireless providers previously approved to place antennas on the roof of 2600 West 7th Street. Defendants do, however, contest whether Clear is similarly situated.

This court finds Clear has adequately alleged that it is similarly situated. The Complaint avers that Clear's antenna arrays and related telecommunications equipment: (1) are substantially similar to previously approved installations; (2) utilize the same infrastructure as previously approved installations; (3) would extend no higher than the building's chimneys or other previously approved installations; and (4) would have no discernable impact on the building's overall appearance. These well-pleaded facts permit a reasonable inference that the structure, placement, or cumulative impact of the existing equipment makes it as or more intrusive than Clear's proposed addition. The Complaint therefore establishes–at least for purposes of Rule 12(b)(6)–that Clear was similarly situated to, but treated differently than, other functionally equivalent providers.[18] As such, defendants' Motion is denied with regard to Count I.

*2. Count II (Effective Prohibition)*

Count II alleges that denial of Clear's application for a zoning variance had "the effect of prohibiting the provision of personal wireless services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). In a Declaratory Ruling dated November 18, 2009 (the "Ruling"), the FCC determined that "this limitation of State/local authority applies not just to the

---

[18] Defendants argue that the roof of 2600 West 7th Street is so saturated by other providers that any additional equipment will necessarily be more intrusive than previous installations. This, however, is an assertion of fact strongly disputed in Clear's Complaint. On a motion to dismiss, Clear is entitled to the benefit of this doubt.

5

first carrier to enter into the market, but also to all subsequent entrants."[19]  This Ruling directly contradicts the Third Circuit's prior "one provider rule," which states that a new entrant to an area cannot successfully assert a claim of effective prohibition if the area is already served by another wireless carrier.[20]  However, because the TCA does not directly address this precise question, and because the FCC Ruling represents a reasonable accommodation of the conflicting policies committed to the agency's care by the statute, the Ruling is entitled to *Chevron*[21] deference and displaces the "one provider rule."[22]

---

[19]  Declaratory Ruling, 2009 WL 3868811, at *18 (F.C.C. November 18, 2009).
[20]  *See APT Pittsburgh*, 196 F.3d at 478-80.
[21]  *Chevron USA Inc. v. NRDC*, 467 U.S. 837 (1984).
[22]  The TCA does not address whether denial of an application for personal wireless facilities siting can have "the effect of prohibiting the provision of personal wireless services" when one or more competitors already serve the relevant geographic market.  After examining the text, legislative history, and purposes of the TCA, conflicting Courts of Appeal have found both interpretations "reasonably within the pale of statutory possibility."  *Verizon Commc'ns Inc. v. FCC*, 535 U.S. 467, 539 (2002); *compare APT Pittsburgh*, 196 F.3d at 478-80 (finding an "effect of prohibiting" claim requires "evidence that the area the new facility will serve is not already served by another provider") (following *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630 (2d Cir. 1999)) *and AT&T Wireless PCS, Inc. v. City Council of City of Va. Beach*, 155 F.3d 423, 428-29 (4th Cir. 1998) (concluding that § 332(c)(7)(B)(i)(II) only applies when the State or local authority has adopted a blanket ban on wireless service facilities) *with Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 633-34 (1st Cir. 2002) (rejecting a rule that "any service equals no effective prohibition") *and MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 731-33 (9th Cir. 2005) (following *Second Generation*).  It is therefore unimportant that the interpretation chosen by the FCC does not square with the Third Circuit's.  The Third Circuit's prior construction of the TCA would trump an FCC construction otherwise entitled to *Chevron* deference only if the Third Circuit held that its construction follows from the unambiguous terms of the statute and leaves no room for agency discretion.  *See National Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).  The Third Circuit decision adopting the "one provider rule" did not so hold.  *See APT Pittsburgh*, 196 F.3d at 480 ("We conclude that this reading of subsection 332(c)(7)(B)(i)(II) effects *the best* accommodation of the two primary goals of the TCA.") (emphasis added).

The "one provider rule," however, is only half of the Third Circuit's test for evaluating whether a zoning determination effectively prohibits the provision of wireless services. The other prong of this analysis (undisturbed by the FCC Ruling) requires Clear to show that "the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve."[23]

The denial in this case sought to serve "the present character of the neighborhood" in that: (1) the cumulative effect of multiple antennas had caused the roof location "to reach it's [sic] saturation point"; (2) the mid rise structure of 2600 West 7th Street made antennas "much more visible from the street and surrounding properties than . . . a high rise structure"; and (3) the ZBA felt that "insufficient efforts were made to find other locations in the area that would meet the coverage needs of the provider."[24] The Complaint, on the other hand, alleges Clear presented "unrebutted evidence" at the ZBA hearing to show that "no other alternate location or structure . . . would work effectively to eliminate the significant gap in its network coverage," and that the building "would be structurally capable of supporting the proposed cell site equipment." The Complaint further alleges that "the radio frequency emissions from the proposed antennas . . . together with the existing antennas will be far below the maximum levels established by the FCC for the safe operation of such facility." In addition, the Complaint states that Clear proffered "before" and "after" photo simulations at the ZBA hearing "to show that the addition . . . would have no discernable impact on the building's overall appearance," as well as a letter from the Delaware State Historic

---

[23] *APT Pittsburgh*, 196 F.3d at 480.
[24] D.I. 8-1 at 7.

Preservation Office concluding that the proposed installation would have "no adverse impact" on historic resources in the vicinity.  These well-pleaded facts directly address the ZBA's purported concerns in denying Clear's application and, if assumed true, permit a reasonable inference that Clear proposed the least intrusive means for closing a significant gap in its wireless service.  Defendants' Motion is therefore denied as to Count II.

   *3. Count III (Failure to Act Timely)*

Count III claims defendants unreasonably delayed their written denial of Clear's application in violation of 47 U.S.C. § 332(c)(7)(B)(ii), which provides that "a State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."  The FCC Ruling of November 18, 2009–issued after Clear's application–held that this provision requires municipalities to process wireless antenna collocation applications within 90 days or a "failure to act" has occurred triggering an applicant's right to seek judicial relief under 47 U.S.C. § 332(c)(7)(B)(v).

In this case, even assuming the FCC interpretation of § 332(c)(7)(B)(ii) entitled to *Chevron* deference and the failure to act genuine, Clear has not suffered harm that this court can resolve equitably.  Indeed, the only reasonable relief for such a failure is to require a written decision, which defendants have already provided.[25]  Accordingly, the

---

[25] Plaintiff cites a number of cases for the proposition that the appropriate remedy for an unreasonable delay in issuing a written decision "is injunctive relief in the

court grants defendants' Motion as it concerns Count III.

*4. Count IV (Failure to Issue a Written Decision)*

Count IV alleges that defendants failed to issue a written decision in violation of 47 U.S.C. § 332(c)(7)(B)(iii), which mandates that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities must be in writing and supported by substantial evidence contained in a written record." As Clear now stipulates that it has received a written decision–the only requirement of § 332(c)(7)(B)(iii) defendants are alleged to have violated–this issue is moot and defendants' Motion is granted regarding Count IV as well.

*5. Count V (State Law)*

Count V asserts a claim under 22 Del. C. § 328, a Delaware State statute allowing those aggrieved by a zoning board's decision to petition the Delaware Superior Court for relief. Defendants argue this court should abstain from exercising supplemental jurisdiction over Count V pursuant to *Burfurd v. Sun Oil Co.*[26] The holding in *Burfurd*, however, relied on the reasoning that difficult issues of State law and policy are better addressed by State courts.[27] There are no difficult issues of State law or

---

form of an order to issue the relevant permits." D.I. 14 at 16 n.3. Each of plaintiff's cited cases, however, involved violation of the separate TCA requirement that decisions be supported by substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B)(iii). The court cannot agree that failure to provide a timely written decision warrants the same relief as failure to support that decision with substantial evidence.

[26] 319 U.S. 315 (1943).

[27] *See id.* at 332; ("Insofar as we have discretion to do so, we should leave these problems of Texas law to the State court where each may be handled as one more item in a continuous series of adjustments.") (internal quotations and citation omitted); *id.* at 332 ("These questions of regulation of the industry by the State administrative agency

policy in this case. Clear's entitlement to relief under 22 Del. C. § 328 depends solely upon application of the TCA; the State zoning regulations identified by defendants play no part in that analysis.[28] Defendants' Motion is therefore denied as to Count V.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that defendants' Motion to Dismiss (D.I. 7) is GRANTED with respect to Counts III and IV of the Complaint and DENIED with respect to Counts I, II, and V of the Complaint.

Date:    August 30, 2010                            /s/ Mary Pat Thynge
                                                                United States Magistrate Judge

---

. . . so clearly involves basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them."); *id.* at 334 ("Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts."); *see also Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746 (3d Cir. 1982) ("*Burford* abstention is appropriate where a difficult question of state law is presented which involves important state policies or administrative concerns.") (citation omitted).

[28] *See Ogden Fire Co. No. 1 v. Upper Chichester Twp.*, 504 F.3d 370, 397 (3d Cir. 2007) (argument that State zoning regulations require *Burford* abstention in an unreasonable discrimination case "borders on frivolity" because "the controlling issue is one of federal law . . . whether the denial of the building permits violates the TCA.").